IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOEL SCOTT FLAKES,

                 Plaintiff              OPINION AND ORDER

     v.

EDWARD F. WALL, *et al.*,                15-cv-245-slc

                 Defendants.

---

In this *pro se* lawsuit, plaintiff Joel Scott Flakes is proceeding on claims that prison staff at Stanley Correctional Institution violated his Eighth and Fourteenth Amendment rights by revealing his sexual orientation to other inmates, disregarding serious risks of harm against him and discriminating against him because he is homosexual. Now before the court is defendants' motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997(e)(a). Dkt. 22. Because the undisputed facts establish that Flakes failed to properly exhaust his administrative remedies before filing suit, defendants' motion for summary judgment will be granted.

OPINION

## I.      Exhaustion Requirement.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418

F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, defendants bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

To exhaust administrative remedies within Wisconsin's Department of Corrections, an inmate must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. Under these provisions, a prisoner starts the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09. Complaints must: (1) be typed or written legibly on forms supplied for that purpose; (2) be signed by the inmate; (3) not contain obscene, profane, abusive or threatening language; (4) be filed under the name by which the inmate was committed to the DOC; and (5) contain only one issue that is clearly identified. *Id.* § DOC 310.09(1). If the complaint fails to meet any of these requirements, then the inmate complaint examiner must return the complaint without processing it, which would mean that the complaint is not assigned a complaint number. *Id.* § DOC 310.09(3). The inmate complaint examiner also may return a complaint without processing it, and direct the inmate to attempt to resolve the issue with a staff member first. *Id.*

§ DOC 310.09(4).  Under the DOC regulations, there is no mechanism for an inmate to appeal a complaint that has been returned without processing for failure to comply with the requirements of § 310.09(1).

If the inmate has complied with the requirements in § 310.09(1), then the inmate complaint examiner may investigate the inmate complaint, "reject" it for one of several reasons set forth in § 310.11(5), recommend a disposition to the appropriate reviewing authority (the warden or the warden's designee), or direct the inmate to attempt to resolve the complaint informally.  *Id.* §§ 310.07(2), 310.09(4), 310.11, 310.12.  If the institution complaint examiner makes a recommendation that the complaint be granted or dismissed on its merits, then the appropriate reviewing authority may dismiss, affirm or return the complaint for further investigation.  *Id.* § 310.12.  If an inmate disagrees with the decision of the reviewing authority, then he may appeal.  *Id.* § 310.13.  If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal the rejection.  *Id.* § 310.11(6).


II.     **Flakes' Inmate Complaints**.

This court granted Flakes leave to proceed on his claims that defendants Richardson, Stout, Glen and Szymanski violated his rights to be free from cruel and unusual punishment and equal protection by: (1) revealing his sexual orientation to other inmates despite knowing that this exposed him to a risk of harm; (2) refusing to respond to his concerns about his cellmate; (3) offering segregation as the only alternative housing option; and (4) permitting other inmates to refuse to be housed with him.  Defendants have submitted plaintiff's complete inmate

3

complaint history report (dkt. 24-1), which shows that plaintiff filed two inmate grievances relevant to his claims.   Defendants contend, however, that plaintiff failed to exhaust his administrative remedies because both of plaintiff's grievances were returned to him without being processed because they contained multiple issues that were not clearly identified, in violation of Wis. Admin. Code § DOC 310.09(1)(e).   According to defendants, plaintiff never corrected the problems with his inmate complaints and thus, never properly filed any inmate complaints raising the claims on which he has been allowed to proceed in this case.   The undisputed facts support defendants' contentions.

### A.    Plaintiff's November 2014 Inmate Complaint.

Plaintiff filed an inmate complaint on November 17, 2014, in which he alleged that Stout, Szymanski and Glenn had created an "unsafe" environment and were discriminating against him and "a certain class of inmates."  (Dkt. 24-2 at 2-5.)  Plaintiff alleged that these defendants had created a "poisonous atmosphere on the unit" by "disparaging" and "purposely outing this class" and treating them with disdain.  Plaintiff, however, did not provide any specific examples of discriminatory treatment, and he did not identify the "class of inmates" to which he was referring.  In the same complaint, plaintiff also alleged that he had been deliberately housed with cellmates that would cause him conflict. Finally, he stated that he was in a wheelchair and alleged discrimination under Title II of the Americans with Disabilities Act.

The next day, on November 18, 2014, the inmate complaint examiner's office returned the complaint to plaintiff without processing it, providing the following explanation:

4

Your complaint materials received on 11/17/2014 are being returned because:

– Complaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)].

– Before this complaint is accepted, you need to attempt to resolve this issue by contacting Mr. Canziani, Deputy Warden [DOC 310.09(4)].

– The ICE is also directing you to provide this office with written documentation of your attempts to resolve the issue as directed. Written documentation means responses to interview requests and other written responses from the staff contacted.

– If you have attempted to resolve the issue through the person(s) indicated above and have not been able to do so after a reasonable amount of time, you may resubmit your complaint for processing by this office within 14 days of the date of the incident.

Dkt. 24-2 at 1.


**B.     Flakes' Attempts to Resolve the Complaint with the Wardens and his December 2014 Inmate Complaint.**

Following return of the complaint, plaintiff submitted an interview/information request to Deputy Warden Canziani on November 24, 2014 (the Monday before Thanksgiving), stating:

Mr. Canziani. I have a civil rights complaint against Ms. Stout and other staff for discriminatory practices against me and a certain class of individuals similarly situated. I have discussed the concerns I have with Ms. Stout to no avail. ICE will not process my complaint without your input.

Dkt. 28-1.

On December 1, 2014 (the Monday after Thanksgiving), Dep. Warden Canziani responded in a typed letter that he had received plaintiff's interview/information request, but had not otherwise "received any correspondence regarding the issue." Dep. Warden Canziani

5

asked plaintiff to send him "more information so that [he could] respond to [plaintiff's] issue knowledgeably." Dkt. 1-1 at 10. There is no evidence in the record that plaintiff provided this information to Dep. Warden Canziani or ever again contacted Dep. Warden Canziani regarding his complaint.

Plaintiff also contacted Warden Richardson about his concerns. The record contains a December 2, 2014 letter from Warden Richardson to plaintiff stating that Warden Richardson had received correspondence regarding plaintiff's "civil rights complaint against Ms. Stout and other staff for discriminatory practices against [him] and a certain class of individuals similarly situated." Dkt. 1-1 at 13. Warden Richardson notes that plaintiff's correspondence did not elaborate on why he felt discriminated, so Warden Richardson had reviewed plaintiff's November 16, 2014 inmate complaint, which had been returned. Warden Richardson further noted that it appeared from plaintiff's inmate complaint that he disagreed with his cellmate assignments and also that he felt discriminated against because of his disability. Warden Richardson invited plaintiff to explain specifically why he felt discriminated against, stated that plaintiff's disability did not allow him to pick and choose his cellmates, and encouraged plaintiff to try to get along with his cellmates and work with his unit supervisor.

Plaintiff filed a second offender complaint on December 12, 2014. (Dkt. 24-3.) This complaint was 6 pages long and began by stating that plaintiff was a "60 year old black man who is disabled and wheelchair dependent" and therefore protected from discrimination by the ADA. Plaintiff continued by charging that Stout, Szymanski and Glenn had engaged in a "systematic outing of a certain class of individuals including [himself]," and that he felt like he had been "reduc[ed] to a lower class of inmates." Plaintiff again failed to include any specifics about how

6

he was being discriminated against, beyond stating generally that certain policies and procedures were discriminatory.

That same day, December 12, 2014, the inmate complaint examiner returned plaintiff's complaint without processing it, stating that his complaint was being returned because, "[c]omplaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)]l." Dkt. 24-3 at 1. Following the return of the second complaint, plaintiff attempted to appeal. He first filed a "Request for Review of Rejected Complaint" with the inmate complaint examiner, dkt. 24-4 at 2, which was returned for failing to use the proper form to file an inmate complaint. Dkt. 24-7 at 1. Plaintiff then filed an "Offender Complaint Appeal" with the Corrections Complaint Examiner's office in Madison, dkt. 24-5 at 2, but that appeal was returned because plaintiff had not identified on the appeal form any particular offender complaint number that he was appealing. Dkt. 24-5 at 1. Of course, plaintiff could not identify any particular offender complaint number because he had never actually filed a complaint that had been processed and received a number. In other words, plaintiff's attempts to appeal failed because the DOC regulations provide no mechanism for inmates to appeal complaints that are simply returned unprocessed, rather than rejected or denied on the merits.

### C.   Analysis.

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. *Woodford*, 548 U.S. at 88; *see also Pozo*, 286 F.3d at 1025. Here, it is undisputed that plaintiff submitted two offender complaints that the inmate complaint examiner returned to him

unprocessed on the grounds that they did not comply with Wis. Admin. Code § DOC 310.09(1)(e), which requires complaints to contain only one issue that is clearly identified. It is also clear that, although plaintiff tried to appeal the return of his complaints, his appeals were improper because they were not permitted under the inmate complaint review system submission rules. Instead, plaintiff should have resubmitted a complaint that was limited to a single, clearly identified issue. But it is undisputed that plaintiff never submitted an inmate complaint raising the claims he is asserting in this case that was accepted and processed by the inmate complaint examiner.

The relevant question for the exhaustion analysis in this case is whether, under the Department of Correction's inmate complaint procedure, it was proper for the inmate complaint examiner to reject plaintiff's complaints and return them on the ground that plaintiff had failed to comply with the procedural requirements in DOC 310.09(1). If it was proper to return them, then plaintiff has not exhausted his administrative remedies. On the other hand, if it was not proper for the inmate complaint examiner to return plaintiff's complaints, then administrative exhaustion was unavailable to plaintiff because he could not appeal or otherwise seek review of the inmate complaint examiner's decision. If that is the case, then there was nothing else for plaintiff to do but seek relief in federal court.

But that's not the case. I conclude that plaintiff's November 2014 inmate complaint and his December 2014 inmate complaint each violated DOC 310.09(1)(e) which requires that a complaint contain only one issue that is clearly identified. Each of plaintiff's complaints contained many different issues, none of which were clearly identified. Plaintiff's scattershot allegations and accusations cover a lot of territory: disability discrimination, cell assignments and

other unspecified policies and procedures that are discriminatory, as well as mistreatment and "outing" of himself and others of a "certain class." Plaintiff does not state that he is homosexual, he does not explain how he or other inmates are being "outed," and he does not state what specific acts of discrimination had been directed toward him. Perhaps the inmate complaint examiner could have  guessed from the word "outing" that the "certain class" plaintiff was referring to was gay inmates, but this would require speculation.  Plaintiff just as easily could have been referring to snitches, gang members, child molesters, or some other "class" of inmate who wanted to keep a certain type of sensitive information private. Indeed, the inmate complaint examiner could have concluded that plaintiff was referring to a class of disabled inmates or even inmates of color, since plaintiff mentions that he is black and references the ADA several times.

Plaintiff argues that his inmate complaints were improperly returned because they were not ambiguous and included all of the information prison officials needed to know to address his concerns.  *Plt.'s Br.*, dkt. 25, at 2-3.  This is simply not true.  Although inmate grievances do not need to lay out detailed facts or articulate legal theories, and they do not need to demand particular relief in order to exhaust administrative remedies, an inmate complaint must "object intelligibly to some asserted shortcoming."  *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). A grievance must be sufficient to place the reviewing official on notice of the basis for the plaintiff's claim.  *Id.*  Here, plaintiff's complaints never expressly state *how* prison officials were discriminating against him or *which* specific policies and procedures were discriminatory.  A prison official reviewing plaintiff's complaints would not have understood that plaintiff was attempting to complain about discrimination on the basis of his sexual orientation or that

9

defendants had placed him at a substantial risk of serious harm from other inmates by revealing his sexual orientation.

Plaintiff also argues that because Warden Richardson reviewed his grievance and responded directly to his concerns, the court should conclude that plaintiff has exhausted his administrative remedies. But Warden Richardson's response actually is further evidence of why plaintiff's grievances were returned in the first place. Warden Richardson did not understand what plaintiff was complaining about, other than his cellmate assignments. Warden Richardson invites plaintiff to elaborate on why he felt he was being discriminated against. and particularly, why he believed he had been discriminated against on the basis of his disability. There is no indication from Warden Richardson's response that he understood plaintiff to be complaining about discrimination on the basis of plaintiff's sexual orientation, or that defendants had acted on plaintiff's sexual orientation in a way that would pose a substantial risk of serious harm to plaintiff.

In sum, plaintiff never filed an inmate complaint that clearly raised the claims at issue in this federal lawsuit and that complied with Wisconsin's inmate complaint review system rules. When plaintiff was notified by the inmate complaint examiner that the complaints he had filed were in violation of procedural rules, plaintiff did not even attempt to correct the problems and resubmit the complaints. Accordingly, plaintiff has failed to exhaust his administrative remedies and this case must be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir.2004) (dismissal for failure to exhaust is always without prejudice).

One final note: in many PLRA lawsuits, an inmate who fails to exhaust before bringing suit is unable to cure the exhaustion problem because the filing deadlines imposed by state

10

prison regulations already have expired and the inmate cannot show good cause for having missed them.  In this case, however, plaintiff might be complaining about ongoing discrimination or an ongoing failure to protect him from serious harm.  If the conduct of which plaintiff is complaining is still occurring, then it would not be too late for plaintiff to seek redress from the institution by filing an inmate complaint (or complaints) clearly identifying the issue(s), one issue per complaint.

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. 22) is GRANTED.  This case is DISMISSED WITHOUT PREJUDICE for plaintiff's failure to exhaust his administrative remedies.  The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 18th day of August, 2016.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

11